

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:18-cv-00341-MAA <br><br> **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff has filed a Complaint seeking review of the Social Security Commissioner's final decision denying his application for a period of disability and Disability Insurance Benefits pursuant to Title II of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# PROCEDURAL HISTORY

On March 2, 2011, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, alleging disability beginning on October 10, 2003. (Administrative Record [AR] 162, 388-91.) Plaintiff alleged disability due to a cervical spine impairment, a bulging disc injury, a lumbar spine impairment, hypertensive cardiovascular disease, hypertension, and severe back pain. (AR 198.)

An Administrative Law Judge ("ALJ") held an administrative hearing and denied Plaintiff's application in a written decision issued on May 31, 2012. (AR 137-53.) On June 15, 2013, the Appeals Council granted review, vacated the ALJ's decision, and remanded the case for further proceedings. (AR 154-57.) The Appeals Council directed the ALJ to consider a prior unfavorable disability ruling from 1998, to further evaluate Plaintiff's ability to perform his past relevant work, and to obtain testimony from a vocational expert if necessary. (*Id.*) After holding a second administrative hearing, the ALJ again denied Plaintiff's application in a written decision issued on August 12, 2014. (AR 159-81.) On August 31, 2015, the Appeals Council denied review. (AR 182-85.)

On October 28, 2015, Plaintiff filed a complaint in this Court in Case No. 5:15-cv-02219-E. (ECF No. 1.) On August 24, 2016, the previously-assigned Magistrate Judge entered judgment reversing the Commissioner's final decision and remanding the matter for further proceedings. (ECF No. 36.) The Court found that the ALJ had failed to resolve an apparent conflict between a vocational expert's testimony and the Dictionary of Occupational Titles. (ECF No. 35.)

On May 10, 2017, a newly-assigned ALJ held a third administrative hearing. (AR 1712-83.) Plaintiff appeared at the hearing with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. (*Id.*)

In a decision issued on October 23, 2017, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 1683-97.) Plaintiff had not engaged in substantial

gainful activity during the period from his alleged disability onset date of October 10, 2003 to his date last insured of December 31, 2008. (AR 1686.) He had severe impairments consisting of cervical spine degenerative disc disease, lumbar spine degenerative disc disease, insomnia, and hypertension. (*Id.*) He did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 1687.) He had a residual functional capacity to perform a range of light work with additional postural and environmental limitations. (AR 1688.) Plaintiff was able to perform his past relevant work as an office clerk, as it is generally performed in the national economy. (AR 1695.) In the alternative, Plaintiff was able to perform other work existing in significant numbers in the national economy, specifically, the occupations of sales attendant, mail sorter, and swatch clerk. (AR 1696-97.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (AR 1697.)

Plaintiff did not file written exceptions to the ALJ's decision with the Appeals Council, nor did the Appeals Council assume jurisdiction over the matter within 60 days after the date of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d).

On February 15, 2018, Plaintiff filed the instant complaint seeking review of the Commissioner's final decision. (ECF No. 1.) The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 11-12.) On June 11, 2018, this case was assigned to the calendar of the undersigned Magistrate Judge. (ECF No. 16.)

## DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ properly rejected Plaintiff's testimony concerning pain, symptoms, and level of limitation. (ECF No. 22, Parties' Joint Stipulation ["Joint Stip."] at 5.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

## A. Legal Standard.

An ALJ must make two findings in assessing a claimant's pain or symptom allegations. Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3; *Treichler*, 775 F.3d at 1102. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons

///

4

must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Effective March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on October 23, 2017, it is governed by SSR 16-3P. *See id.* at *13 and n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

**B.     Background.**

Because Plaintiff filed a Title II disability claim, the relevant period of adjudication was from the alleged onset date of October 10, 2003 to the date last insured of December 31, 2008. (AR 1683, 1684.) At the administrative hearing, Plaintiff testified as follows about his condition during that period:

Plaintiff's main symptoms began in June 2003, when he was in a stopped car that was rear-ended at 40 miles per hour. (AR 1752.) He started feeling pain from

a "structural problem" in his cervical and lumbar spines. (AR 1756.) In 2004, he began receiving epidural injections, which were like "gold" in relieving his pain. (AR 1758-59.) But his insurance company did not always approve the injections. (AR 1758.) And even with the injections, his symptoms in his neck and lower back were slowly worsening. (AR 1759.) He still felt "knife-like" pain in those areas. (AR 1760, 1762.) His symptoms significantly limited his ability to function: he could sit for 10 to 15 minutes, stand for 15 minutes, walk for a few hundred yards, and lift grocery bags weighing 10 pounds. (AR 1760-61, 1763.)

Although Plaintiff's primary symptoms were in his neck and lower back, he also claimed symptoms from other conditions. Before the June 2003 accident, Plaintiff had problems in his wrists, resulting in weakness and numbness in his hands. (AR 1753.) He also alleged that he was disabled in part because of hypertension, and that his medications for hypertension and his other conditions caused drowsiness and fatigue. (AR 1757, 1779-80.)

## C. Analysis.

In assessing Plaintiff's subjective symptom allegations, the ALJ analyzed Plaintiff's allegations about his wrists, neck, lower back, and hypertension, with most of the analysis focused on Plaintiff's main symptoms in his neck and lower back. (AR 1689-92.) The ALJ's analysis of Plaintiff's allegations is reviewed below for legal error and substantial evidence.

### 1. Wrists.

At the first step of his two-step analysis of Plaintiff's subjective symptom complaints, the ALJ rejected Plaintiff's complaints about his wrists because he had not established an underlying impairment for the relevant time: "there is no documented clinical or diagnostic evidence demonstrating the presence of any such

///

severe impairments in the claimant's upper extremities prior to the date last insured" of December 31, 2008. (AR 1689.)

An ALJ "need not believe a claimant's testimony of pain or other symptoms if unsupported by objective medical findings establishing a medical impairment that reasonably could be expected to produce the claimed pain or other symptoms." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989); *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985); 20 C.F.R. § 404.1529(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged[.]"). However, if an ALJ disregards a claimant's subjective symptom complaints for this reason, he "must make specific findings justifying that decision." *See Green v. Heckler*, 803 F.2d 528, 531 (9th Cir. 1986).

The ALJ made a specific finding that, as to Plaintiff's complaints about his wrists, he had not presented objective medical evidence of an underlying impairment that reasonably could be expected to produce the numbness and weakness he alleged, prior to the date last insured of December 31, 2008. (AR 1689.) And later in his decision, the ALJ specifically found that although Plaintiff eventually was diagnosed with bilateral carpal tunnel syndrome, the diagnosis was made in 2015, "well after the date last insured." (AR 1692 [citing AR 1577].) Plaintiff does not dispute these findings, and the Court finds nothing in the objective medical record to contradict them. Thus, the ALJ was entitled to reject Plaintiff's testimony about his wrist symptoms because of the absence of objective medical evidence of an underlying impairment during the relevant period.

2.  **Neck and Lower Back.**

As to Plaintiff's primary allegations of pain in his neck and lower back, the ALJ first found that Plaintiff's medically determinable impairments reasonably

7

could be expected to cause the alleged symptoms. (AR 1690.) The ALJ next found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) Although the ALJ discussed Plaintiff's statements about his neck and lower back at length, the ALJ stated two reasons to reject the statements. (AR 1689-91.)[2]

### a. effective control with treatment

The ALJ's first stated reason to reject Plaintiff's complaints about his neck and lower back was that "pain complaints related to these conditions were managed with prescription medication and steroid injections, and the records supports the conclusion that his condition stabilized." (AR 1690-91.)

An ALJ may reject a claimant's complaints of excess pain by finding that "the underlying complaints upon which [his] reports of pain were predicated had come under control." *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003); *see also Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (recognizing that an ALJ may consider evidence of "control of . . . pain that was satisfactory"). The ALJ cited evidence that treatment for Plaintiff's neck and lower back, particularly steroid injections, gave "good relief" in controlling his pain. (AR 1691 [citing AR

---

[2] Although the ALJ clearly stated two reasons to reject Plaintiff's subjective symptom allegations about his neck and lower back, the parties' briefing raises the possibility of additional reasons that the ALJ may have stated. The parties assume that the ALJ rejected Plaintiff's allegations because of Plaintiff's daily activities, his attempts at work, and inconsistent objective clinical evidence. (Joint Stip. at 7-9, 11, 17-18, 19-20.) However, the Court's review is limited to the reasons the ALJ asserts. *See Connett v. Barnhart*, 340 F.3d 870, 874 (9th Cir. 2003). Although the ALJ did make some general findings about Plaintiff's daily activities, his attempts at work, and the objective clinical evidence, it is not clear that the ALJ specifically relied on any of these findings to reject Plaintiff's subjective symptom allegations. Thus, the Court does not review them. *See Brown-Hunter*, 806 F.3d at 494; *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014).

617, 629].) The ALJ also cited Plaintiff's own testimony at the latest hearing that the injections were like "gold" (AR 1691; *see also* AR 1758), as well as Plaintiff's testimony at an earlier hearing that the injections gave him relief at 90 percent, which had led Plaintiff's treating physician to decide that surgery was unnecessary so long as he was receiving relief from the injections (AR 1691; *see also* AR 52). This was a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's allegations about his symptoms in his neck and lower back.

Plaintiff objects to this finding by arguing that the relief he experienced from the steroid injections was only partial and did not warrant the ALJ's conclusion that he could have worked during the relevant period. (Joint Stip. at 10.) As authority, Plaintiff points out that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." (*Id.*, quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).) Here, however, the record contains substantial evidence supporting the ALJ's determination that the relief Plaintiff received from the steroid injections was significant and satisfactory. (AR 567, 592, 610, 613, 617, 625, 629, 635, 641, 644, 647, 665, 707, 711, 810.) In October 2008, Plaintiff reported that after receiving the injections, "he has felt the best he has ever felt." (AR 711.) The relief from the injections lasted for up to six months. (AR 809, 810.) And Plaintiff testified, as noted, that the injections were like "gold" and provided relief at 90 percent. (AR 52, 1758.) Although Plaintiff's pain in his neck and lower back was a constant and recurring problem during the relevant period, the recurrence of his pain evidently was attributable to temporary delays in insurance coverage for the steroid injections (AR 563, 572, 606, 625, 638, 644, 809, 1077), rather than to their ineffectiveness. Given this evidence, the ALJ reasonably could have found that the effective control of Plaintiff's symptoms in his neck and lower back belied his allegations of disabling pain.

///

9

Plaintiff further objects to this finding by pointing to evidence showing that his condition deteriorated after his date last insured of December 31, 2008. (Joint Stip. at 11.) Although the evidence Plaintiff cites was generated after his date last insured of December 31, 2008, it is relevant to his condition before that date. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition."). Plaintiff specifically cites evidence showing that he had a reduced range of motion in the lumbar spine in March 2010, had positive straight leg raising and similar findings in April 2010, had tenderness to palpation and a positive Spurling's test in the cervical spine in June 2011, and discussed the possibility of back surgery in May 2012 and November 2015. (Joint Stip. at 11 [citing AR 770-71, 887, 1059, 1273, 2613].)

However, the ALJ was not required to extrapolate from this later evidence that it portrayed an accurate picture of Plaintiff's condition on or before his date last insured of December 31, 2008. *See generally Lair-Del Rio v. Astrue*, 380 F. App'x 694, 695 (9th Cir. 2010) (finding an ALJ justified in rejecting as unpersuasive medical opinion evidence that post-dated the date last insured). Evidence that was more probative of Plaintiff's condition at that time, the contemporaneous medical evidence from the latter half of 2008, was inconsistent with his allegations of disabling pain before the date last insured. In June 2008, Plaintiff reported that he had "significantly improved" with steroid injections. (AR 567.) In October 2008, Plaintiff reported, as noted, that "he has felt the best he has ever felt." (AR 711.) In November 2008, Plaintiff reported a recurrence of pain but described the injections as "one of the better things that has ever happened to him" because he "gets excellent relief from pain and increased mobility and range of motion of both the cervical and lumbar spine, status post epidurals." (AR 707.) Based on the contemporaneous medical evidence from 2008, the ALJ reasonably could have declined to credit Plaintiff's allegations of disabling pain on or before December

31, 2008, notwithstanding later evidence showing a possible worsening of Plaintiff's condition. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (finding an ALJ entitled to reject a medical opinion that post-dated the date last insured where it was "not substantiated by the medical evidence relevant to the period in question"); *see also Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (finding an ALJ entitled to disregard a social worker's opinion that post-dated the date last insured, particularly where it conflicted with medical evidence during "the actual period at issue").

In sum, the ALJ stated a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's subjective symptom allegations about his neck and lower back based on effective control of his pain.

### b. treating physician's opinion.

The ALJ's second reason to reject Plaintiff's complaints about his neck and lower back was that the ALJ's residual functional capacity ("RFC") determination for the relevant period was consistent with a report written during that period by Plaintiff's treating physician, Dr. Jack Akmakjian. (AR 1691.) An ALJ may reject a claimant's complaints of excess pain by pointing to reports and conclusions by treating physicians that undermine the complaints. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

In June 2006, Dr. Akmakjian, a worker's compensation physician, completed a "permanent and stationary report." (AR 591-97.) Dr. Akmakjian concluded that Plaintiff should be precluded from "heavy lifting and repetitive overhead work" in the cervical spine and precluded from "heavy work" in the lumbar spine. (AR 1691; *see also* AR 594.) The ALJ concluded that this report was consistent in substance with the ALJ's RFC determination that Plaintiff could perform a range of light work during that period (AR 1691), which in turn meant that Plaintiff could perform either his past relevant work or other work in the national economy.

The ALJ reasonably could have drawn such an inference from the treating physician's June 2006 report. Dr. Akmakjian's recommendation that Plaintiff be precluded from "heavy lifting," "repetitive overhead work," and "heavy work" meant, under California law, that Dr. Akmakjian believed Plaintiff had lost approximately one half of his pre-injury capacity for lifting and various activities such as bending, stooping, and climbing. *See Glass v. Workers' Comp. Appeals Bd.*, 105 Cal. App. 3d 297, 303 n.1 (1980). Plaintiff's pre-injury capacity for lifting was 50 to 60 pounds (AR 591), and his pre-injury capacity for activities such as bending, stooping, and climbing was three hours per day (AR 834). Thus, Dr. Akmakjian's June 2006 opinion about the reduction in Plaintiff's functional abilities was consistent with the ALJ's RFC determination that Plaintiff could perform a range of light work at that time, which the ALJ defined as lifting 20 pounds occasionally and ten pounds frequently, with several postural restrictions. (AR 1688.) And as the ALJ noted, it was significant that "[f]or sometime thereafter through at least November 26, 2008, which was approximately one month before the date last insured, Dr. Akmakjian continued to opine that [Plaintiff's] disability/work status was the same as indicated in the permanent and stationary report from June of 2006." (AR 1693 [citing AR 706-10, 1503, 1505].)

Moreover, Dr. Akmakjian's June 2006 opinion about Plaintiff's reduced abilities was consistent with the demands of the light jobs that the ALJ concluded Plaintiff could perform at that time — office clerk, sales attendant, mail sorter, and swatch clerk — which require only light lifting with no significant postural activities. *See* DOT Nos. 209.562-010 (Office Clerk), 299.677-010 (Sales Attendant), 209.687-026 (Mail Clerk), 222.587-050 (Swatch Clerk). Thus, the ALJ reasonably could have concluded that Dr. Akmakjian's June 2006 report was inconsistent with Plaintiff's complaint that he was unable to perform any work during that time.

///

Although Dr. Akmakjian submitted an opinion several years later, in August 2014, that contradicted his June 2006 report, the ALJ was entitled to rely on the earlier report. In the August 2014 opinion, Dr. Akmakjian assigned limitations that were much more severe than his earlier report had indicated, and he stated that the limitations were retrospective to 2004. (AR 1507-12.) Because Dr. Akmakjian's August 2014 report conflicted with his June 2006 report, the ALJ was entitled to resolve that conflict. *See Morgan*, 169 F.3d at 599, 601 (recognizing that the resolution of conflicts in the evidence is solely the province of the ALJ). The ALJ resolved the conflict by explaining that Dr. Akmakjian's August 2014 questionnaire was entitled to less weight because Dr. Akmakjian had failed to explain why his later opinion was more accurate than his earlier report, which was written during the relevant period. (AR 1694.) The ALJ was entitled to resolve the conflict on this basis. *See Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995) (finding an ALJ justified in rejecting a treating physician's retrospective report that was inconsistent with his earlier reports during the period of treatment); *Johnson*, 60 F.3d at 1433 (finding an ALJ justified in rejecting a treating physician's retrospective conclusion that a claimant was totally disabled where it contradicted his own contemporaneous findings). Thus, the ALJ was not foreclosed from relying in part on the treating physician's June 2006 report to reject Plaintiff's claim that he was unable to work before his date last insured of December 31, 2008.

In sum, the ALJ stated a clear and convincing reason based on substantial evidence in the record to reject Plaintiff's subjective symptom allegations about his neck and lower back, based on the contemporaneous report of his treating physician.

///

///

13

### 3. Hypertension.

Finally, as to Plaintiff's alleged symptoms from hypertension, the ALJ first found that Plaintiff had a medically determinable impairment that reasonably could be expected to cause the alleged symptoms. (AR 1690.) The ALJ next found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) The ALJ gave two reasons to support this determination. (AR 1692.)

#### a. conservative treatment

First, the ALJ reasoned that "it appears [Plaintiff] received conservative treatment during the adjudication period and there was no evidence of any significant side effects resulting from that impairment." (AR 1692 [citing AR 1042].) The cited evidence establishes that in July 2010, Plaintiff's dosage of hydrochlorothiazide for his high blood pressure was reduced, with the possibility of stopping it completely. (AR 1042.) Although this cited evidence post-dated Plaintiff's date last insured of December 31, 2008, the evidence was consistent with other evidence of Plaintiff's conservative treatment for hypertension during the relevant period. Specifically, the record showed no "major ill-effects" from his hypertension medication, as well as treatment consisting of advice about diet, weight loss, and salt restriction. (AR 1021, 1034.) Thus, the ALJ reasonably could have inferred from evidence of conservative treatment for hypertension that Plaintiff's symptoms, particularly his allegations of significant medication side effects, were not as severe as he alleged. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

///

### b. effective control with treatment

Second, the ALJ reasoned that "the record indicates his hypertension was controlled with medication." (AR 1692 [citing AR 1033-34].) The Court concurs that the evidence cited by the ALJ showed effective control of Plaintiff's hypertension with medication. *See Celaya*, 332 F.3d at 1181; *Warre*, 439 F.3d at 1006; *Odle*, 707 F.2d at 440. According to the cited evidence, Plaintiff's hypertension was characterized as "controlled," and other than his chronic problems with his neck and lower back, he was considered "generally well." (AR 1033-34.)

In sum, the ALJ stated two clear and convincing reasons based on substantial evidence in the record to reject Plaintiff's subjective symptom allegations regarding his hypertension.

### D. Conclusion.

For the foregoing reasons, the ALJ stated clear and convincing reasons based on substantial evidence in the record to discount Plaintiff's subjective symptoms allegations about his wrists, neck, lower back, and hypertension. Thus, reversal is not warranted on this issue.

## ORDER

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: February 19, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE